Good morning, your honors, and may it please the court, Robert Burke, E-E-R-K-E, for the petitioner Louis Prado-Espinoza. Your honors, the best place, I think, for me to start my argument is to mention the case of Segura v. Holder, which was one of the additional citations presented by the government in this case. And the reason I want to start by mentioning that is because in the Segura v. Holder case, this court, I think, is explicit in saying we didn't reach the due process issue, which is the due process issue that I intend to be arguing here today. And I do think that this court might be signaling that that's an open issue and one that's right for the argument. Having started there, I think fundamentally it needs to be recognized that this is a constitutional issue, that this is a due process issue. The reason I think it bears mentioning at the beginning of my argument is because the government makes some pains to say that there were certain issues which weren't exhausted and there may be issues that are outside of this court's jurisdiction. The jurisdictional argument that they make has to do with whether the timing of the initiation of proceedings would be included under the logic of Reno v. The Arab Americans case and therefore a wholly discretionary decision that the attorney general would make. I would posit that it's not. The Reno v. The Arab Americans case actually explicitly says there are three discrete factors, not three mushy factors, but three discrete factors, and those factors are whether to commence, to adjudicate, or to execute. And the later case on that issue, Jimenez, also says, number one, 1252G, is to be construed narrowly, and number two, that still wouldn't bar a constitutional challenge. In that case, it happened to be a retroactivity challenge. But in terms of this court's jurisdiction, I think the framing of the question is, at what point might the attorney general's decision morph or change across the line from being a discretionary decision to being a violation of due process? And I would argue that this is exactly the place. There are already two places where the courts have held that even where there's no limitation placed, a limitation, a delay in bringing an action can still be a violation of due process. It arises in both the criminal context and it arises also in the civil context. But doesn't Section 242G bar that argument or take away jurisdiction from us to consider that argument? Because it wouldn't reach into the discretion as it applies to the constitutional argument that's being made. If I'm referring to the right section, portion of 242 that the court is inquiring about. So I think that's really the threshold issue. Does a discretionary decision, and we've got different kinds of discretionary decisions, is deviating from my script a little bit. But even this Court has recognized there's fettered discretion and there's unfettered discretion. And where there's constitutional limitation, where there are constitutional issues implicated, I don't think we can call that an unfettered exercise of discretion. If we apply, you know, here we are in an immigration context. We're quasi-criminal. By the way, Your Honors, I did want to reserve three minutes for rebuttal. We're in this immigration context. We're quasi-criminal, but we're actually civil. We've got these two standards about where a delay actually jumps into a constitutional issue, actually jumps into a due process violation as alleged here. In the criminal context, it's got to be a deliberate attempt to gain the advantage or a reckless disregard of the prejudicial impact. In the civil context, as cited in the brief, it's the length of the delay, the reason for the delay. Well, let me get back to Judge Wardlaw's question, which sort of hits it right on the head. There's a statute that says that we as a court have no jurisdiction over when removal proceedings are initiated. Now, I take it, I see you nodding. You agree there is such a statute. Well, I do agree that they did amend with IRA-IRA the statute. Okay. Given that statute, I'm asking you, do you have any case that says that you can do what you're doing? The case that says I can do what I'm doing, I think. Or that we have jurisdiction to hear this issue, I guess is a better way to put it. It may come out of Jimenez v. Angeles. I beg your pardon? It may come out of Jimenez. What do you mean, it may come out? Do you have a case that says that we have jurisdiction to hear this? I have a case that says where it falls into a constitutional context, you would have jurisdiction to hear. And which case says that? I was citing to Jimenez v. Angeles. Let me pull up the citation for that prospect, 291 F. 3rd, 594. And let me actually have some nice language that I thought was kind of neat from that. Here, there's another case, Sulik v. Silkin, which I think is also cited in my brief. That interprets the statute that we're talking about? No, it does not. Okay. Do you have any case that interprets the statute? No, Your Honor. Okay. Let's get down to the nitty-gritty. What's your basic gripe here? Our basic gripe is that waiting 20 years in this case exceeded a discretionary authority. Like I said, you have federal discretionary authority. It looks to me like every decision that I'm aware of says there is no statute of limitations on removal. And that's correct, and that's what that amendment in Part G is basically telling us. But there is a statute of limitations as far as the rescission of the green card. We understand that, but they didn't pursue rescission. They pursued removal. And there is no statute of limitations on removal. There is no statute of limitations on removal. Okay. So why isn't your goose cooked then because of that? My goose is not cooked because in every context, from my perspective, from every context, you have a point at which a delay becomes a due process issue. End of story. Whether they've got unfettered, whether they have. Well, is this just your opinion, or do you have any authority for that? Well, I have authority that cites it from a criminal perspective where a delay becomes a due process issue. We're talking in the immigration cases. This is an immigration case. This is an immigration case. Immigration case has been deemed to be quasi-criminal. Do you have any immigration cases? Only from the Third Circuit, Your Honor. The Third Circuit has held the delay to be completely unreasonable, and their logic is. . . In removal? In a removal proceeding. What case is that? That case is Bomby Bell v. INS. And the citation on that one is 99 F. 3rd, 557. And that's Third Circuit. And they say notwithstanding the traditional interpretation, notwithstanding the other circuit's interpretation, we're going to find that in this case, under these facts, this delay is a prejudicial delay. This delay is an unjustified delay. This delay, that the statute of limitations within the rescission context, in order to be given any kind of meaning at all, in order for those words not just to be words that Congress spoke, not intending them to have any effect, that the only fair reading. . . that that limitation has to be given meaning. And the only way to say that that section be given meaning is to say that there's some significance to moving on these factors, which were known. . . And this may be a factual issue, a little asterisk there. . . which were known at the time of adjustment. These were just known. . . Counsel. Oh, I'm sorry, Your Honor. Counsel, at the beginning of this proceeding, I gather from the record that your client was 71 years old. What's his age now? Oh, he must be. . . Let's see, we started this in 2001 with the NTA, so he's got to be 76, 77. That's approximately. Let me see if I wrote it down. Is there any crime charged against him after the 1975 criminal convictions? Yes. He had two illegal reentries. Two illegal reentries. And those are actually listed. I'm sorry, Your Honor. Which years? Those are listed on his application for. . . I find those on his application for adjustment. It was a registry case, not a regular adjustment. But it says 82 San Clemente, illegal reentry. It says 76 Los Angeles, California, illegal reentry. But those are, again, same issue. These are actually disclosed on the application that the service adjudicated and granted. So what is this thing that says charges expunged, record claimed? Well, that brings me back to the asterisk, Your Honor. There's no finding that there was an expungement, and the record seems to be not containing an expungement. The government argues, therefore, there was no expungement. I would have to make the argument that that doesn't mean there was no expungement. That just means we don't know whether we don't have an expungement to show the court at this time that wasn't presented in the court below. So there may be circumstances, but the expungement is a virtual irrelevancy at this point. Is he still married to his U.S. citizen wife? Not only is he still married to his U.S. citizen wife, but his U.S. citizen daughter, who is actually the victim in the underlying crime, is the one who actually had indicated that she intends to petition him should this be remanded. And he would be eligible. But that's where the prejudice comes in on the due process argument. Well, I know in the criminal context we've held that there are, in Section 1326 cases, that some prior crimes are too stale to be used to enhance a sentence. There's nothing equivalent to your knowledge. I think there is, but the courts have traditionally disagreed with me, and I think it's that limitation on rescinding adjustments. And I think that using the deportation proceeding to end around that statute simply renders that statute vacuous. It just simply renders that statute without meaning. I'm hard-pressed to think that Congress passed a law that only had benefit for the printer. Thank you very much, Mr. Burton. We'll have a few minutes left when we come back. I appreciate it. Thank you. May I please record Ada Bosk on behalf of the Attorney General. Mr. Prado-Espinosa has never contested that he has criminal convictions and that he was removed following a deportation proceeding. His basic argument has been that 1256 shields him from deportation proceedings, and that issue, which is the only issue he exhausted, is contrary to this Court's precedent and, frankly, most of the precedent in the majority of the circuits, with the exception of the Third Circuit. 1256 very plainly, as this Court has held, applies only to rescission proceedings. And contrary to Prado-Espinosa's arguments, there's a reason for that. One, Congress specifically chose not to employ a statute limitation to deportation proceedings. Rescission proceedings now, today, by regulation, have a number of due process safeguards that weren't in place before 1994. That is, before the 1256 was amended. At that time, in 1988, for example, the only thing that an alien in rescission proceedings was entitled to was notice of the intent to rescind, 30 days to respond, and counsel at his expense. So rescission proceedings are different than deportation proceedings, and the 1256 five-year limitation on rescission is plainly applicable, as this Court has consistently held, only to rescission. Let me ask you something, counsel. Sure. Can the government wait until someone's on their deathbed to begin removal proceedings? Well, I mean, it seems like he's... That's not an entirely fair question, because Mr. Prado-Espinosa certainly is not on his deathbed. No, he's not. But I'm saying he's, we're talking about a man who's 76 years old. He's obviously been here for, you know, decades. His underlying crime of moral turpitude was over 36 years ago. I don't understand why the government's acting now. Sure, if I can respond in that hint, please. Sure, Mr. Prado-Espinosa was convicted in 1976. And I want to clarify something for the record, because it seems to be misstated elsewhere. When Mr. Prado-Espinosa was initially removed or he was excluded, it was not because of the conviction. He had been arrested at that time but had not been convicted. He was initially excluded because he was here without a visa. So that happens. He's removed. He illegally reenters. So it's not simply the criminal conviction. It is also the illegal reentry after deportation. Now, here, counsel before this court says, well, he disclosed that. But that's not what the record shows. What the record shows is that he disclosed in his adjustment application that he had illegally entered in 1976 and 1982. He specifically did not reveal that he had been in prior removal proceedings, and he did not disclose his A-member. I don't want to go too far into that, because this court's case law doesn't turn, as to 1256, doesn't turn on whether there's fraud involved. It simply is based on the plain reading of the statute, which is that 1256, the five-risk limitation, applies only to rescission proceedings, not to deportation proceedings. Before the board, that is, the argument that Prado-Espinosa made was threefold, but it all related to 1256. None of the other arguments that he has made to this court he raised to the board. And the board, in its decision, addressed the three specific things that he argued to it. But he still has his latches and waiver claim, which are the same claims, essentially. They are the same claim. Were they exhausted? No. I mean, our first argument is that he didn't raise anything like that. In fact, during the proceedings before the immigration judge, the INS attorney said, well, what they're basically arguing is estoppel. And what the immigration judge, in terminating, has found is basically estoppel. And Prado-Espinosa's response was no. The issue is not an issue of an estoppel. The issue is a plain reading of 1256. And the VIA can't grant equitable relief, right? Sure. So why is it necessary to exhaust a claim for equitable relief before the VIA? Well, there are certainly factual issues that arise with claims like that, that the immigration judge specifically could hear and that the board could then opine on. But that they can't reach the ultimate question of equitable estoppel, in which, by the way, he would have to show government misconduct, affirmative government misconduct, doesn't mean that he can present an issue to this court for the first time that he has never raised and specifically disavowed before the immigration judge proceedings. Counsel, in a way, it seems like the government's wasting its time. How does it bring these people, surface them, and then decide to charge them and remove them? What's the procedure? How did this happen here? Well, nobody's contending that when the government, when the INS initially granted Mr. Prado-Espinosa's adjustment of status application, it didn't make a mistake. I mean, before the immigration judge, he repeatedly acknowledged that he was not eligible for adjustment of status at that time. It was a mistake, a mistake that they have then tried to rectify once he again became, he came into contact with immigration officials. And that was in July. How did he come into contact with them again? The representation in the record is that he reported, as a sexual offender, he has to report, and he reported back to a police department where an immigration official was embedded, and he was discovered that way. And so the initial charge was simply the criminal convictions. It was only later that the INS attempted, or excuse me, it's only later that the INS added the prior deportation procedure. Doesn't your conduct in this case, wouldn't it tend to discourage sex offenders from registering and complying with the state registration laws? If you're going to have an INS agent there trying to sweep up anyone who actually tries to comply? No, Your Honor. I mean, Mr. Prado-Espinoza is very plainly removable. The only argument that he's raised to the Board is that he should be shielded from removal based upon the 1256, which this Court has repeatedly rejected. Now, that he came into contact with immigration officials through self-reporting is one of the many ways that he may have come into contact with immigration officials. Again, the criminal conviction is not the only basis for his removal. It's also the prior deportation. And I would like to correct something that Petitioner's counsel said earlier, because, again, what he disclosed was not that he had been previously deported in his adjustment of status application. He disclosed that he had reentered illegally twice, and there is a significant difference between both of those things. And it is the – when the INS recharged him in 2001, they charged him not simply with the criminal convictions, but also with the prior deportation. And it's the basis that those two items are what make him excludable, and he's never challenged those individual removable charges. He's simply argued 1256, and now before this Court he's arguing equitable estoppel, which, again, the Court would have to find, and there's no evidence of, and he's never presented any evidence of affirmative government's conduct. And additionally, he would also have to show prejudice. And I know Professor Spinoza sort of assumes that he's been prejudiced, but because he was never a lawful permanent resident, and this Court has consistently, repeatedly held that lawful has a significance. To be lawful doesn't mean that you just went through the process of adjustment of status, but that you satisfied the elements of adjustment of status. And throughout the immigration judge proceedings, Mr. Prado-Spinoza conceded he did not qualify for adjustment of status at the time that he applied. He had – because of the prior deportation, he didn't have the continuous residence that was required for adjustment under the registry statute. So he cannot be prejudiced because he was never been in lawful – he was never a lawful permanent resident. You know, Counsel, you're a very good and zealous advocate for the government in this particular case. But I have to say there's a lot of sympathy for someone who's been living in this country with his family and, you know, hasn't committed a crime since the child molestation and the illegal reentries, which, as you probably are well aware, were probably done so that he could be with his family, because that's what happens with a lot of those – in a lot of those situations. I mean, do you – does the U.S. government really want to send this elderly person away from his family back to Mexico? Is this something that is really a priority for the government? I mean, if I could just see – if you were in the courtroom over there where Judge Frierson is calling in, I mean, he would be beside himself with this case and asking you how you could live with yourself standing there. I don't – I know you're doing a good job on behalf of your client. But is there any way that this thing could be mediated or resolved? Well, I actually – I can – there's two ways I can respond. First, Mr. Padres-Spinoza is obviously able to go to the Department of Homeland Security and ask whether they wish to defer removal. I can tell the court that I informally went to DHS to ask whether this was a case that was appropriate for the prosecutorial discretion given the recent developments and was told no, that he actually fits at least four of the criteria that make him a priority for removal, even though there are equities that are offset, that may also contribute. Which prison did you go to? Which one would you go to? Is this LA New York? Excuse me? Is this LA New York? Is this area? I don't know who that is. No, I contacted the LA – I contacted the LA DHS. In charge of ICE, LA New York is? I did not spoke to that person directly. I spoke to the field office, which is what our direction is, to speak to the individual field offices because they have the most knowledge of an individual case. Maybe you could run it up a little higher. Well, again, Petitioners is more than – I mean, if we were to refer this to mediation, maybe you would be able to run it up a little higher. Your Honor, I – Let me ask you an answer to that. Is he, in fact, eligible for any relief? No. Well, he was eligible for voluntary departure, but the IJ erred by failing to advise him of that. Well, that claim is not – I realize that, but now we're not talking about – he didn't exhaust that, but I'm saying there was a form of relief that the IJ failed to advise him of. And we would quibble with that, Your Honor, because the immigration judge actually went above and beyond trying to ascertain whether Mr. Pablo Espinoza was eligible for any relief. And the only thing he argued before the immigration judge was 245-I. That's when he had the really lousy attorney. I didn't keep track of – The one that was disbarred. The counsel. I know that the immigration judge asked for briefs from both parties, asked whether Mr. Pablo Espinoza was eligible for relief, and it is – and he's not. I mean, he's not – he wasn't eligible for 245-I because he didn't move for an I-130 petition within time. If the case went to mediation and you were inclined to, out of the goodness of your heart, to do this guy a favor, what could you do for him legally? Is there anything you could do for him? No, Your Honor. As I said, we informally approached the field office here and was told that he fits – he has a felony conviction. I don't know what he fits, but, I mean, is he eligible for adjustment in any way? No, Your Honor, he's not. Again, his argument at one point was that he might have been eligible for 245-I. Why isn't he eligible for adjustment based on his family status? Well, he has a criminal conviction and he has a prior deportation and a legal reentry. So he has things that might make him inadmissible. Isn't there a waiver? Did you have a waiver of that? He might get a waiver, and they did consider this before the immigration judge, whether he might get a waiver of the crime involving moral turpitude, which follows from the sexual abuse of his two daughters. The prior deportation – The 1326? Excuse me? Is the 1326 the problem? I don't – It's a legal reentry. No, because I don't think he's eligible. Why – I didn't get the answer to you. Why is he not eligible for any relief? There's nothing. He's eligible because he's inadmissible for a number of other reasons, the criminal convictions and the prior deportation. Those items render him ineligible for adjustment of status. The immigration judge considered cancellation of removal, both for non- and for lawful permanent residents and found he was ineligible for both of those. That has never been contested. He's not eligible for 212C because he's not a lawful permanent resident. And I think the only waiver that he might have gotten was the 212H for crime involving moral turpitude, but that still leaves him to prior deportation. But that wasn't charged. It was. I'm sorry. So was he convicted of 21326? Well, and that's – I think that there's a difference in the record, I think, with what the counsel is saying. I'm not sure that he was convicted of a legal reentry of 1326. He was removed, and therefore he is subject to a prohibition. I think it was 1182A-16, which made him inadmissible given the prior deportation. Is that waivable in any way? It doesn't. I have not been able to find a way that is waivable. What if the proceedings were to be reopened? Excuse me? What if the proceedings were to be reopened? He has not moved for reopening. I don't know what basis he would do so for. Typically when we send it – well, he has a new lawyer. He's a good lawyer now, which is a change in circumstances. Typically when we send things to mediation, one resolution is a joint motion to reopen. But, Your Honor, that's normally where there is some relief available to him, and at this point there is no relief available to him. And I would like to clarify that the proceedings here were initiated in January of 2001. If his daughter wanted to file an I-130 for him, she had time to do it, and they instead elected to place all their proverbial eggs in the 1256 basket. That time now is lost. He cannot use an I-130 simply now to remedy his prior inadmissibility. He would have to leave the country and then have her petition for him that way. Wouldn't he have to stay away from the country for 10 years in order to do that? 1986. And because of the time in proceedings, I'm not sure which bar he's subject. He might be subject to the five-year bar. I just haven't sorted it for you guys. Thank you very much. Thank you. Mr. Burke, back to you. I think the best use I can make of my remaining time is to talk about eligibility for relief. And the first point that I would want to bring before the court is the only reason he's not eligible for relief is because the service delayed in bringing this action as long as it did. Had the service acted in a reasonable amount of time, this all could have been brought to light before the 245i sunset date, and it could have been resolved before the 245i sunset date, and he would have had the benefit of 245i. That notwithstanding, at least in theory, he would still have relief, and that has to do with a little distinction between admitted for lawful permanent residence and inspected and admitted. Now, even if we concede repeatedly that he wasn't eligible for adjustment as lawful permanent residence and that were to be undone, the old registry application could theoretically be used to say that was an inspection and admission. Has there been any application for that relief? No, but he'd be in the immediate relative category. Well, her point was you should have asked for it. Well, there was no way to ask. I mean, after the sunset date of 245i, it was, you know, well, now I guess obviously I'm saying, you know, we could prove that it was a lawful entry. But, again, I would have to defer to Judge Wardlaw. That's sort of after discovered, and it's sort of, you know, of no consequence at this level. If it were to be reopened, I think that would be something that would have to be pursued, and I don't think that aspect of it was brought up in the court below. But the court below was dealing only with it from a 245i perspective, and my theory is that. It's theoretical, you know, so I don't even know if he could do it. But in theory, he could. So I've got to come back to saying the only reason he's not eligible for anything is because of this long delay or that he's not clearly eligible for anything is because of this long delay, although there are theories that I could assert in the immigration court. Thank you. Thank you very much. Thank you, Mr. Burke. I appreciate it. Thank you. Thank you, too.
judges: Fletcher, Silverman, Wardlaw